IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Giorgio Scott-Mohammad,        :
               Petitioner     :
                              :
       v.                    :
                              :
Unemployment Compensation   :
Board of Review,            :   No. 1583 C.D. 2024
               Respondent   :   Submitted: April 13, 2026

BEFORE:   HONORABLE MICHAEL H. WOJCIK, Judge
             HONORABLE CHRISTINE FIZZANO CANNON, Judge
             HONORABLE STACY WALLACE, Judge

OPINION
BY JUDGE FIZZANO CANNON                FILED: June 1, 2026

Giorgio Scott-Mohammad (Claimant) petitions, *pro se*, for review from the October 21, 2024 order of the Unemployment Compensation Board of Review (Board), which affirmed the decision of an Unemployment Compensation (UC) referee (Referee) finding Claimant ineligible for benefits under Section 401(a) of the Unemployment Compensation Law (Law),[1] which requires that, to be eligible to receive UC benefits, a claimant earn 37% or more of total base year wages in one or more quarters other than the highest quarter in a claimant's base year. Upon review, we vacate the Board's order and remand for further proceedings.

## I. Background and Procedural Posture

Claimant received wages from two employers in 2021: Metro Beverage of Philadelphia, Inc. (Metro Beverage) and Maxum Petroleum Operating Company (Maxum Petroleum). *See* Monetary Determinations dated April 25, 2021

---

[1] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, 43 P.S. § 801(a).

(Monetary Determination)[2] at 1, Certified Record (C.R.) at 28. Claimant filed an application for UC benefits effective April 24, 2022, establishing a base year[3] of January 1, 2021, to December 31, 2021. *See* UC Board of Review Decision and Order mailed October 21, 2024 (Board Decision)[4] at 1, Findings of Fact (F.F.) 1, C.R. at 112.

On April 25, 2022, the Department of Labor & Industry (Department) issued a Monetary Determination indicating that Claimant received $29,663.89, $6,065.34, and $8,845.35 in wages for the second, third, and fourth quarter of 2021, respectively, but received no wages in the first quarter of 2021.[5] *See* Monetary Determination, C.R. at 28. Based on these figures, the Department found Claimant to be financially ineligible for UC benefits under Section 401(a) of the Law because he had insufficient base year wages outside his highest calendar quarter. *See* Monetary Determination, C.R. at 28-29.

---

[2] Certified Record Item No. 3. For unknown reasons, the Certified Record includes two identical Monetary Determinations. *See* Certified Record (C.R.) at 28-45. For ease of disposition, we refer to these Monetary Determinations in the singular herein and cite to only the first of the two included in the Certified Record.

[3] The Law defines a "base year" as "the first four of the last five completed calendar quarters immediately preceding the first day of an individual's benefit year." 43 P.S. § 753(a). "'Calendar quarter' means the period of three consecutive calendar months ending on March thirty-first, June thirtieth, September thirtieth or December thirty-first, or the equivalent thereof[.]" 43 P.S. § 753(d).

[4] Certified Record Item No. 12.

[5] Per the Monetary Determination, Maxum Petroleum paid Claimant's entire second quarter 2021 wages of $29,663.89 from April through June 2021. *See* Monetary Determination at 1, C.R. at 28. Metro Beverage paid Claimant's entire fourth quarter 2021 wages of $8,845.35 from October through December of 2021. *See id.* Metro Beverage and Maxum Petroleum, combined, paid Claimant's $6,065.34 in wages during the third quarter of 2021 ($1,600.00 from Metro Beverage and $4,465.34 from Maxum Petroleum). *See id.*

Claimant appealed the Monetary Determination to the Referee, who conducted a telephonic hearing during which Claimant testified. *See* Transcript of Referee's Hearing August 5, 2022 (Transcript),[6] C.R. at 77-90. Following the hearing, the Referee affirmed the denial of UC benefits under Section 401(a) of the Law. *See* Referee's Decision dated December 1, 2022 (Referee's Decision),[7] C.R. at 92-100. Claimant timely appealed to the Board. *See* Claimant's Appeal,[8] C.R. 102-105; Acknowledgement of UC Appeal to Board of Review,[9] C.R. at 107-10. The Board modified[10] and affirmed the Referee's Decision on October 21, 2024. *See*

---

[6] Certified Record Item No. 8.

[7] Certified Record Item No. 9.

[8] Certified Record Item No. 10.

[9] Certified Record Item No. 11.

[10] We note that "the Board, not the referee, is the ultimate fact[-]finding body and arbiter of credibility in UC cases." *See Waverly Heights, Ltd. v. Unemployment Comp. Bd. of Rev.*, 173 A.3d 1224, 1227 (Pa. Cmwlth. 2017). In the instant matter, the Referee made the following findings of fact:

> 1. [C]laimant filed an application for unemployment compensation (UC) benefits effective 3/6/22, thereby establishing a base year period of October 1, 2020 to September 30, 2021.
>
> 2. [C]laimant earned $1,600 in wages from Metro Beverage of PA in the 4th Quarter of 2021, $29,663 from Maxum Petroleum Operating Company in the 2nd Quarter of 2021 and $4,465 in the 3rd Quarter of 2021.
>
> 3. There is insufficient evidence of any base year wages in the record before the Referee.

Referee's Decision at 2, C.R. at 93. The Board made different findings of fact, which we discuss *infra*. *See* Board Decision at 2, C.R. at 113.

Board Decision at 1-2, C.R. at 112-13. Claimant then appealed to this Court.[11] *See* Notice of Appeal.

## II. Discussion

"A claimant has the burden of proving his financial eligibility for UC benefits." *Pagliei v. Unemployment Comp. Bd. of Rev.*, 37 A.3d 24, 26 (Pa. Cmwlth. 2012). To be eligible for UC benefits, Section 401(a) of the Law requires: (1) that a claimant must have, within the base year, been paid wages for employment as required by Section 404(c) of the Law, 43 P.S. § 804(c); and (2) that the claimant earn not less than 37% of the total base year wages in one or more quarters other than the highest quarter in the base year. *See* 43 P.S. § 801(a). "Wages" means all remuneration . . . paid by an employer to an individual with respect to his employment[.[12]]" 43 P.S. § 753(x).

At the hearing on this matter, Claimant expressed confusion about being denied UC benefits. *See* Transcript at 3, C.R. at 80. The Referee explained the requirement that, to be eligible for UC benefits, 37% of the wages from a claimant's base year must have been earned in a quarter or quarters outside of the high earning quarter of that claimant's base year. *See* Transcript at 3-4, C.R. at 80-81. The Referee further explained that Claimant's base year was January through

---

[11] "Where, as here, the party with the burden of proof was the only party to present evidence and did not prevail, this Court's scope of review is limited to determining whether claimants' constitutional rights were violated, whether the Board committed an error of law and whether the Board capriciously disregarded competent evidence in the record." *Unangst v. Unemployment Comp. Bd. of Rev.*, 690 A.2d 1305, 1307 n.3 (Pa. Cmwlth. 1997).

[12] With certain exceptions not implicated in this case. *See* 43 P.S. § 753(x)(1)-(11).

December of 2021. *See* Transcript at 3-4, C.R. at 80-81.[13] The Referee then reviewed the Monetary Determination with Claimant, explaining that Claimant needed 37% of the listed $44,574.58 total wages from 2021 – or $16,492 – to have been earned outside his high quarter,[14] and that if his earnings from the other three quarters of 2021 did not reach the required 37% of his 2021 total wages, he would not meet the UC benefits eligibility threshold. *See* Transcript at 4-7, C.R. at 81-84; *see also* Monetary Determination, C.R. at 28.

Claimant testified that the Monetary Determination was incorrect in terms of his 2021 Maxum Petroleum earned wages, and that the Maxum Petroleum W-2 form entered into evidence (W-2 Form) illustrated the higher wages earned. *See* Transcript at 4-8 & Claimant Exhibit 2, C.R. at 81-85 & 87. The Referee agreed with Claimant that the W-2 Form possibly illustrated 2021 first quarter earnings that would allow Claimant to exceed the 37% threshold. *See* Transcript at 7-8, C.R. at 84-85.[15]

Based on this evidence, the Board made the following findings of fact:

---

[13] The first finding of fact from the Referee's Decision listed the base year in question as October 1, 2020, to September 30, 2021. *See* Referee's Decision at 2, C.R. at 93. The Board Decision corrected this misstated base year to January 2021 through December 31, 2021. *See* Board Decision at 1, C.R. at 112. Additionally, as noted, the Referee referred to the proper base year when explaining the process to Claimant at the hearing. *See* Transcript at 3-4, C.R. at 80-81;

[14] Per the Monetary Determinations, Claimant's high quarter for 2021 was the Second Quarter (April through June), during which he earned $29,663.89 in wages. *See* Monetary Determination, C.R. at 28.

[15] Upon reviewing the W-2 Form, the Referee stated: "Okay. All right. $52,485 minus – there we go. $34,192. That brings you to possibly [sic] first quarter earnings of $18,293, which would pop you well over the [37% threshold]." Transcript at 8, C.R. at 85.

1. Effective April 24, 2022, [C]laimant filed for unemployment compensation benefits, establishing a base year of January 1, 2021 to December 31, 2021.

2. In the first quarter of 2021, [C]laimant had no wages.

3. In the second quarter of 2021, [C]laimant had $29,663.89 in wages.

4. In the third quarter of 2021, [C]laimant had $6,065.34 in wages.

5. In the fourth quarter of 2021, [C]laimant had $8,845.35 in wages.

Board Decision at 1, C.R. at 112. The Board then concluded:

Based on a review of the record, [C]laimant did not earn 37 percent of his total base year wages in a quarter outside of his high quarter. In the first quarter of 2021, [C]laimant had no wages. In the second quarter of 2021, [C]laimant had $29,663.89 in wages. In the third quarter of 2021, [C]laimant had $6,065.34 in wages. In the fourth quarter of 2021[, C]laimant had $8,845.35 in wages. [C]laimant did not produce sufficient evidence of any additional wages in his base year. As such, [C]laimant is not financially eligible for UC benefits under Section 401(a) and 404 of the [] Law for the application effective April 24, 2022.

Board Decision at 2, C.R. at 113.

We cannot agree with the Board's conclusion. The Board's findings do not account for the additional, unaccounted-for wages paid to Claimant by Maxum Petroleum in 2021 as testified by Claimant and evidenced by the W-2 Form. Likewise, the Board's findings of fact reflect no consideration of the Notice of Financial Determination dated October 21, 2021 (October 2021 Determination

6

Notice),[16] contained in the Certified Record,[17] which indicates that Maxum Petroleum paid Claimant wages totaling $21,446.64 during the First Quarter of 2021. *See* October 2021 Determination Notice, C.R. at 19. Of course, if previously applied towards a separately *granted* UC benefits claim, the 2021 First Quarter wages would be unavailable to Claimant for the consideration of the instant claim. *See Lewis v. Unemployment Comp. Bd. of Rev.*, 454 A.2d 1191, 1993 (Pa. Cmwlth. 1983) (affirming Board determination qualifying wages employed to establish base year for granted claim cannot be used in subsequent application for benefits, noting specifically: "we would doubt that the legislature intended a claimant to be entitled to use the same quarter's wages twice—i.e. for two successive benefit years"); *Burgit v. Unemployment Comp. Bd. of Rev.*, 511 A.2d 247, 247-48 (Pa. Cmwlth. 1986) (citing *Lewis* and prohibiting use in a subsequent application for UC benefits of wages from overlapping base year quarters in a prior successful application for benefits); *Auberzinsky v. Unemployment Comp. Bd. of Rev.*, 722 A.2d 1178, 1181 n.5 (Pa. Cmwlth. 1999) (citing *Lewis* to note that a UC claimant is not permitted to re-use quarterly wages from a previous successful UC benefits application for a financial eligibility determination in a subsequent application). Here, however, the October 2021 Determination Notice makes clear that Claimant's previous UC benefits claim was *denied* (for the failure to reach 37% non-high-quarter threshold). *See* October 2021 Determination Notice, C.R. at 19. As such, Claimant's wages earned from Maxum Petroleum in the First Quarter of 2021 were not, in fact,

---

[16] Certified Record Item No. 2.

[17] The Referee entered the documents from the Certified Record into evidence at the hearing. *See* Transcript at 2-3, C.R. at 79-80.

"already used"[18] in another UC benefits claim and therefore should have been available for the instant claim. The Board had access to the W-2 Form and the October 2021 Determination Notice and erred by not considering this information in its determination of the instant matter.

The Board's argument that "[w]ages used to determine financial eligibility in a prior benefit year cannot [be] utilized in a subsequent benefit year[,]" misapplies its cited case law. Board's Br. at 7. The Board's cited cases illustrate the long-recognized rule that a claimant may not include wages applied to previous financial eligibility calculations where prior UC benefits were awarded a second time for another UC claim in a subsequent benefit year. *See* Board's Br. at 7 (citing *Lewis*, *Burgit*, and *Auberzinsky*). These cases do not, however, involve the application of wages previously applied to a financial eligibility calculation for a *denied* UC benefits claim to a subsequent UC benefits claim. To the extent the Board's argument herein would have this Court extend the established rule that once used, wages may not be used a second time for a second UC benefits application, to all wages considered in prior financial eligibility calculations, regardless of whether UC benefits were ultimately awarded based on the calculations that included consideration of such wages,[19] we decline the invitation. Such an expanded rule would effectively remove wages earned by a claimant from consideration of a subsequent proper application for UC benefits where – as in the instant case – the inclusion of such otherwise-unused wages would allow a claimant to meet the 37% non-high-quarter threshold. In such a scenario, a claimant would receive no

---

[18] Board's Br. at 8.

[19] *See* Board's Br. at 6-8.

8

consideration or benefit whatsoever in financial eligibility determinations for certain wages actually earned. For this reason, we decline to extend the preclusion of the wages considered in a previous financial eligibility determination from consideration in a subsequent financial eligibility determination that employs the wages previously claimed, where the wages in question were not ultimately used to grant UC benefits by virtue of the denial of the previous claim.[20]

### III. Conclusion

For the above reasons, we vacate the Board Order and remand the matter to the Board for further proceedings[21] consistent with this opinion.

_____
CHRISTINE FIZZANO CANNON, Judge

---

[20] We further note that the Board's argument that Claimant did not offer testimony or evidence to prove that his First Quarter 2021 wages were not already used, *see* Board's Brief at 7-8, is belied by the October 2021 Determination Notice contained in the Certified Record, which clearly indicates that the Department denied the claim that previously included the $21,446.64 in wages from Maxum Petroleum in its financial eligibility determination. *See* October 2021 Determination Notice, C.R. at 19.

[21] A remand is required in this matter, at a minimum, to allow sufficient fact finding to resolve the discrepancy between Claimant's First Quarter 2021 Maxum Petroleum wages of $21,446.64 noted in the October 2021 Determination Notice and the $18,356.60 figure that represents the difference between Claimant's 2021 Maxum Petroleum total wages from the W-2 Form ($52,485.83) and Claimant's total Maxum Petroleum 2021 wages as noted on the Monetary Determination ($34,129.23). *See* October 2021 Determination Notice, C.R. at 19; W-2 Form, C.R. at 87; Monetary Determination, C.R. at 28.1.

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Giorgio Scott-Mohammad,      :
            Petitioner     :
                              :
         v.                 :
                              :
Unemployment Compensation    :
Board of Review,           :   No. 1583 C.D. 2024
            Respondent    :

# **O R D E R**

AND NOW, this 1st day of June, 2026, the October 21, 2024 order of the Unemployment Compensation Board of Review is VACATED, and the matter is REMANDED to the Unemployment Compensation Board of Review for further proceedings consistent with the foregoing opinion.

Jurisdiction is relinquished.

_____
CHRISTINE FIZZANO CANNON, Judge